| UNITED STATES DISTRICT COURT | | EASTERN DISTRICT OF TEXAS |
|---|---|---|

| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:11-CR-127(13) |
| | § | |
| BAJUNE MOSEBY | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Bajune Moseby's ("Moseby") Petition for Compassionate Release (#1001), wherein he requests that the court release him from imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) due to the threat of Coronavirus Disease 2019 ("COVID-19"). The Government opposes the motion (#1009). After conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.   Background

On January 11, 2012, a federal grand jury in the Eastern District of Texas returned a First Superseding Indictment charging Moseby and 15 co-defendants in Count 1 with Conspiracy to Possess With the Intent to Distribute Marijuana, in violation of 21 U.S.C. § 846. After a five-day jury trial, the jury returned a guilty verdict as to Count 1 of the First Superseding Indictment, finding Moseby responsible for a quantity of 1,000 kilograms or more of a mixture or substance containing a detectable amount of marijuana. On February 22, 2013, the court sentenced Moseby to 293 months' imprisonment, followed by a 5-year term of supervised release. Three years later, the United States Court of Appeals for the Fifth Circuit granted a joint motion to vacate Moseby's sentence and remanded the case for resentencing. On August 12, 2016, the court sentenced

Moseby to 188 months' imprisonment, followed by a 5-year term of supervised release.  Moseby is currently housed at Federal Correctional Institution Ashland, located in Ashland, Kentucky ("FCI Ashland").  His projected release date is October 24, 2025.

## II.   Reduction for Alleged Sentencing Disparity

As part of the basis for his motion, Moseby claims that "[i]f sentenced today under modern laws, [he] would not have received a sentence of 188 months for a marijuana trafficking offense." His Presentence Investigation Report ("PSR"), dated June 2, 2016, reveals that Moseby was held responsible for 5,962 kilograms of marijuana in connection with the conspiracy.  The court's authority to reduce or modify a sentence is limited once a sentence of imprisonment has been imposed. *Dillon v. United States*, 560 U.S. 817, 819 (2010); *United States v. Varner*, 948 F.3d 250, 253 (5th Cir. 2020); *United States v. Banks*, 770 F.3d 346, 348 (5th Cir. 2014); *United States v. Hernandez*, 645 F.3d 709, 711 (5th Cir. 2011).  Pursuant to 18 U.S.C. § 3582(c), a district court is authorized to modify a previously imposed term of imprisonment only under the following circumstances:  (1) when the court receives a motion from the Director of the Bureau of Prisons ("BOP"), or under certain circumstances, a motion from the defendant, indicating that there are extraordinary and compelling reasons warranting a reduction and that reduction is consistent with applicable policy statements issued by the Sentencing Commission; (2) when the district court, pursuant to Rule 35(a) of the Federal Rules of Criminal Procedure, acting within 14 days after the imposition of sentence, wishes to correct an arithmetical, technical, or other clear error identified in a previously imposed sentence; (3) when the defendant has provided substantial assistance and the government moves for a sentence reduction; or (4) when the defendant has been sentenced to a term of imprisonment based upon a sentencing range that has subsequently been

2

lowered by the Sentencing Commission.  18 U.S.C. § 3582(c); *see Banks*, 770 F.3d at 348; *United States v. Meza*, 620 F.3d 505, 507 (5th Cir. 2010).

When a sentencing range has subsequently been lowered, the court may reduce a defendant's sentence "if such reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(2); *United States v. Benton*, 546 F. App'x 365, 368 (5th Cir.), *cert. denied*, 571 U.S. 1074 (2013); *United States v. Doublin*, 572 F.3d 235, 237 (5th Cir.), *cert. denied*, 588 U.S. 1002 (2009).  The Sentencing Commission policy statement regarding sentencing ranges that have subsequently been lowered reads, in part, as follows:

> (2) EXCLUSIONS—A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if—
>
> > (A) none of the amendments listed in [U.S.S.G. § 1B1.10(d)] is applicable to the defendant; or
> >
> > (B) an amendment listed in [U.S.S.G. § 1B1.10(d)] does not have the effect of lowering the defendant's applicable guideline range.

U.S. SENTENCING GUIDELINES MANUAL § 1B1.10(a) (U.S. SENTENCING COMM'N 2018) ("USSG").  Although a district court is authorized to modify a previously imposed sentence when the defendant has been sentenced to a term of imprisonment based upon a sentencing range that has subsequently been lowered by the Sentencing Commission, "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range." U.S.S.G. § 1B1.10(b)(2)(A). Nevertheless, "a defendant is not eligible for a reduction under § 3582(c)(2) if a qualifying amendment 'does not have the effect of lowering the defendant's applicable guideline range.'" *United States v. Benitez*, 822 F.3d 807, 810 (5th Cir. 2016) (quoting U.S.S.G. § 1.1B10(a)(2)(B)).

3

Applying the retroactive guidelines here, Moseby's sentencing range remains the same today (151 to 188 months), as his total offense level would be 34 (base offense level of 32 for at least 3,000 kilograms but less than 10,000 kilograms of marijuana plus a 2 point enhancement for the operation of a stash house).  *See* U.S.S.G. §§ 2D1.1(b)(12), (c)(4).  Because, under the applicable statute, the court may not reduce a defendant's sentence when his guideline range is unchanged, 18 U.S.C. § 3582(c)(2) (reduction permitted in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing *range* that has subsequently been lowered by the Sentencing Commission) (emphasis added), the court cannot grant the relief Moseby requests.  Hence, his sentencing disparity claim is without legal basis.

III.    Compassionate Release

On December 21, 2018, President Trump signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under

4

> section 3142(g); and that such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP).  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf.  *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release.").  Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate

release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Franco*, 973 F.3d at 467 ("The text . . . outlines two routes a defendant's motion can follow to be properly before the court.  Both routes begin with the defendant requesting that 'the [BOP]' 'bring a motion on the defendant's behalf.'"); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

On September 7, 2020, Moseby filed a request for compassionate release with the Warden of FCI Ashland on the same grounds as his present motion.  On September 10, 2020, the Warden of FCI Ashland denied Moseby's request, noting:

> [He has] not provided all of the documentation as required in the Program Statement.  [He has] not provided information on where [he] will receive medical care and how [he] will pay for [his] medical care.  [He has] received 2 greatest level incident reports during [his] term of incarceration.  Also, [his] early release would minimize the severity of [his] offense as [he] has only served 58.9% of [his] sentence.  Based on all of these factors, [his] request has been denied.

Although Moseby may have complied with the exhaustion requirement before filing the instant motion, nothing in his motion indicates that extraordinary and compelling reasons exist to release him from confinement.

6

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S.S.G. § 1B1.13. In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C. § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

A.     <u>Medical Condition</u>

In the instant motion, Moseby, age 48, contends that he is eligible for compassionate release due to his medical condition.  The USSG provides that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 cmt. n.1(A).

In his motion, Moseby claims that he suffers from the following health problems: "Immune Deficiency (due to prolonged use of corticosteroids), Borderline Diabetic, People with Liver Disease (hepatitis), Neurologic Disorder (neuropathy, sciatica, low back L5-S1), Chronic Hypertension, and Cigarette and Marijuana smoker since the age of 16 years old."  He also claims that his toenail became detached in 2013, at which time he "caught an infection and a fungus which [he] still [has]."  Further, Moseby claims that "for the past few years [he has] been bleeding from [his] anus, and was told that that's a symptom correlated to colon cancer."  Moseby attached limited medical records to his motion that confirm that he suffers from vitamin D deficiency, spinal disc degeneration of the L5-S1 disc, a back sprain, neuropathy, high blood pressure, and a history of sciatica.  In 2018, he was taking medications for his vitamin D deficiency and back pain.

8

When his PSR was prepared in 2012 and later revised in 2016, Moseby informed Probation that he was healthy and was not taking any prescription medications.  Moseby's BOP medical records indicate that as of November 22, 2019, he had been diagnosed with a back sprain, congenital pes planus (flat feet), acute sinusitis, and pain in his right foot, for which he was prescribed medication.  During a health screen on June 5, 2019, Moseby denied having diabetes or hypertension and informed the medical staff that he was not taking any medications.  Moseby had recorded blood pressure levels of 130/73 on June 17, 2019; 129/81 on June 26, 2019; 115/68 on July 1, 2019; 124/82 on July 17, 2019; and 133/81 on August 12, 2020, indicating that he has normal to somewhat elevated blood pressure.  As of October 7, 2020, Moseby had A1C levels of 5.8, signifying that he does not have diabetes.  Moseby's BOP medical records do not indicate that he ever complained to BOP medical staff of an infected toe or anal bleeding.  The records also make no mention of Moseby ever being diagnosed with liver disease or an immune difficiency.

Probation's investigation, as confirmed by BOP records, indicates that Moseby is classified as a medical Care Level 1 inmate.  Care Level 1 inmates "are generally healthy, under 70 years of age, and may have limited medical needs requiring clinician evaluation and monitoring."  Even if Moseby had all the ailments he claims, his medical summary would not meet the criteria listed above.  None of these medical conditions is terminal or substantially diminishes his ability to provide self-care.  BOP records supplied by the Government reveal that Moseby has no medical restrictions, is housed in general population, is cleared for food service, and can perform regular duty work assignments.  Hence, Moseby has failed to establish that a qualifying medical condition exists that would constitute extraordinary and compelling reasons to reduce his sentence.  Further, "compassionate release is discretionary, not mandatory, and [may] be refused after weighing the

9

sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). Where, as here, a prisoner has engaged in "severe" criminal conduct, the district court has discretion to deny compassionate release after weighing the evidence. *Id.* at 693-94.

Moreover, granting Moseby compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the United States Court of Appeals for the Fifth Circuit found that the district court did not abuse its discretion in denying compassionate release to a defendant due to the defendant's not yet having served a sufficient portion of his sentence. *Id.* at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Id*. In the instant case, releasing Moseby after he has served 112 months of his 188-month sentence, approximately 65.4% according to Probation, would similarly minimize the impact of his crime and the seriousness of his offense.

## B.   Family Circumstances

Although the USSG acknowledges that extraordinary and compelling reasons may exist with respect to a defendant's family circumstances, it specifies the following qualifying conditions: (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or (ii) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant

would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C)(i)-(ii). In his motion, Moseby, who has never been married, claims that he has "a minor son whose mother is dead, that desperately needs [Moseby] at home with him." He claims that he is the sole caregiver of his son, and that his son expresses suicidal thoughts when he is unable to see his father, including during the COVID-19 restrictions. Moseby admits that his son's mother died prior to his incarceration. The records reveal that his son's mother died in January 2010, before Moseby was arrested in June 2011. Further, the PSR notes that the child lives with Moseby's mother in Indianapolis, Indiana, who has responsibility for caring for him. In fact, BOP records dated October 23, 2020, indicate that Moseby has no dependents under the age of 21. Therefore, Moseby cannot claim he is the only available caregiver for the child. *See United States v. Jackson,* No. CR 6:17-73-HMH, 2020 WL 6110998, at *2 (D.S.C. Oct. 16, 2020) (denying compassionate release for family circumstances where the caregiver of the defendant's minor children passed away but the children were being cared for by a relative); *see also United States v. Watson*, No. 6:16-CR-06118 EAW, 2020 WL 6049710, at *2 (W.D.N.Y. Oct. 13, 2020) ("While the Court does not doubt that Defendant's incarceration is difficult for his family, and likely even more difficult during this pandemic, the situation described by Defendant [and his mother] does not rise to the level of 'extraordinary and compelling' circumstances so as to justify a sentence reduction."). Hence, Moseby fails to meet the requirements for family circumstances that establish extraordinary and compelling reasons.

11

C.      "Other" Reasons

Moseby's request for compassionate release potentially falls into the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, 425 F. Supp. 3d 573, 583 (M.D.N.C. 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Moseby for any "other" reason. In exercising its discretion, the court, likewise, finds that no extraordinary and compelling reasons exist in relation to Moseby's situation. Moseby maintains that if he contracts COVID-19 it will be fatal for him due to prison overcrowding and there being no way to distance himself from other inmates. Moseby expresses concerns regarding the spread of COVID-19

among the prison population.  Nevertheless, as of December 10, 2020, the figures available at www.bop.gov list 148 inmates (out of a total inmate population of 979) and 24 staff members at FCI Ashland as having confirmed positive cases of COVID-19, 176 inmates and 13 staff members who have recovered, and 1 inmate who has succumbed to the disease.  Thus, it appears that the facility where Moseby is housed is handling the outbreak appropriately and providing adequate medical care.

Although Moseby expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Moseby, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated.  *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Woods*, No. 4:11-CR-106-SDJ, 2020 WL 6391591, at *4 (E.D. Tex. Nov. 2, 2020) (noting that "courts have concluded that an inmate's concerns about risks associated with the spread of COVID-19 are not consistent with the policy statement of the Commission as required by Section 3582(c)(1)(A)"); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds

13

to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").   Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release. *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).   Thus, Moseby has failed to establish that a qualifying medical condition or other reasons exist that would constitute extraordinary and compelling reasons to warrant his release from imprisonment.

The court further finds that compassionate release is not warranted in light of the applicable factors set forth in § 3553(a).   *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Chambliss*, 948 F.3d at 693-94. Moseby's offense of conviction stems from his participation in a large-scale, international drug trafficking conspiracy that involved the importation from Mexico and distribution of between 10,000 and 30,000 kilograms of marijuana from 2006 through 2011.   Moseby maintained a stash house for the conspiracy and had a direct connection to the conspiracy's primary source of supply in Mexico.   According to drug ledgers, the stash house was utilized to conceal, store, and

14

distribute approximately 5,962 kilograms of marijuana.  Upon arresting Moseby at his residence, law enforcement discovered an assembled hydroponic marijuana growing system that Moseby admitted he was planning to use, as well as a book about growing hydroponic marijuana, notes on the prices of various marijuana seeds, and a drug code sheet.  Officers also discovered an AR-15 semi-automatic rifle, a Ruger semi-automatic pistol, and a large amount of ammunition. According to the PSR, the weapons, ammunition, and marijuana growing equipment were within the reach and view of Moseby's minor child who was living in the residence at the time.

Moseby has a prior conviction for operating a vehicle while intoxicated.  In 2006, he was arrested and charged with intimidation, two counts of domestic battery, and disorderly conduct involving his breaking into the residence of the mother of his child and causing her physical injury which required four stitches.  The charges were subsequently dismissed.  In 2009, Moseby was arrested for pointing a firearm in which the police report stated that he made unlawful entry into an apartment while armed with a 40 caliber handgun and threatened four individuals, including a 3-year-old child.

Even after his offense of conviction and nine years of incarceration, Moseby expresses no remorse.  He stated in his request to the Warden of FCI Ashland that "[i]f I could rewind time and change what has happened, I wouldn't change a thing, because this experience has shaped me into the man I am today, and I did say MAN, I can proudly say I am a MAN."  When interviewed in connection with the preparation of his PSR, Moseby informed Probation that, starting at age 10, he has smoked marijuana at least two days a week.  Moseby has also had four disciplinary violations while in BOP custody, with two incidents involving the possession of a hazardous tool (a cellular phone).  In view of the circumstances surrounding his offense of conviction, his

15

criminal history, his disciplinary history while in prison, his history of substance abuse, and his demonstrated lack of remorse for his criminal conduct, the court cannot conclude that Moseby would not pose a danger to any other person or to the community, if released from prison at this time.

Moreover, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19.  In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement.  *See United States v. Collins*, No. CR 04-50170-04, 2020 WL 1929844, at *3 (W.D. La. Apr. 20, 2020).  The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff.  Since March 26, 2020, the BOP has placed 18,658 inmates on home confinement.  The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities."  *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020).  The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement.  18 U.S.C. § 3621(b); *United States v. Donnell*, ___ F. Supp. 3d ___, No. 4:10-CR-65-SDJ-CAN, 2020 WL 5939095, at *7 (E.D. Tex. Aug. 4, 2020); *Ambriz v. United States*, 465 F. Supp. 3d 630, 633 (N.D. Tex. 2020); *United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887,

at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In his Memorandum to the BOP dated March 26, 2020, Attorney General Barr acknowledges that the Department of Justice ("DOJ") has an obligation to protect both BOP personnel and inmates.  He also notes that the DOJ has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways."  The Attorney General issued a subsequent Memorandum to the BOP on April 3, 2020, in which he emphasizes that police officers protecting the public face an increased risk from COVID-19 and cannot avoid exposure to the virus, with their numbers dwindling as officers who contract the virus become ill or die or need to recover or quarantine to avoid spreading the disease.  Accordingly, he cautions:

> The last thing our massively over-burdened police forces need right now is the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released, that they have a safe place to go where they will not be mingling with their old criminal associates, and that they will not return to their old ways as soon as they walk through the prison gates.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one."  No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)).  Here, there is no reason to believe that Moseby would not revert to his drug-dealing and drug-abusing activities, if released from prison at this juncture.

17

In short, Moseby has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

IV.    Conclusion

Consistent with the foregoing analysis, Moseby's Petition for Compassionate Release (#1001) is DENIED.

 SIGNED at Beaumont, Texas, this 11th day of December, 2020.

_Marcia A. Crone_
_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

18